[Cite as *State v. Ronny*, 2016-Ohio-3448.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   102968

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EMMETT RONNY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-582463-B

**BEFORE:**  Boyle, J., Keough, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**  June 16, 2016

**ATTORNEY FOR APPELLANT**

Tyresha Brown-O'Neal
614 W. Superior Avenue
Suite 1144
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Oscar E. Albores
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1}   Defendant-appellant, Emmett Ronny, appeals his conviction, raising the following three assignments of error:

I.   The convictions are against the manifest weight and sufficiency of the evidence.

II.   The trial court erred when it allowed the state of Ohio to call Sergeant Phillip Christopher.

III.   The trial court erred when it allowed the state to call Mr. Royes as a court witness.

{¶2}   Finding no merit to the appeal, we affirm.

## I.   Procedural History and Facts

{¶3}   On January 12, 2014, Demetrius Burkes was shot in the stomach at his apartment.   Ronny, along with codefendant Alexander Royes, was arrested and indicted on several charges related to the incident.   Specifically, Ronny was indicted on eight counts: attempted murder, two counts of aggravated burglary, two counts of felonious assault, two counts of aggravated robbery, and having weapons while under disability. All of the counts carried one- and three-year firearm specifications and seven of the counts carried a notice of prior conviction specification.   Ronny pleaded not guilty to the charges and elected to have the having weapons while under disability charge and notice of prior conviction specification tried to the bench.   The remaining charges were heard by a jury where the following evidence was presented.

**A.  The Shooting**

**{¶4}**  Burkes and his former fiancée, Xaviera Weems, first met Royes in October 2013.  Up until the time of the shooting, Burkes sold marijuana to Royes on an almost daily basis.  According to both Burkes and Weems, Royes introduced himself as "Jay," and they only knew him by this name.

**{¶5}**  On the day of the shooting, Burkes was home at his second-floor apartment with Weems and another friend.  At approximately 1:00 p.m., Weems responded to a knock on the door while Burkes was in the bedroom sleeping.  According to Weems, Royes was at the door.  Weems answered the door, opening it halfway and telling Royes that "there's nothing going on, nobody is up."  While speaking to Royes, another person — who Weems later identified as Ronny —  ran up the stairs and pushed the door open, forcing Weems to back up into the apartment.

**{¶6}**  Weems testified that she observed Ronny for "a few minutes" — that he was wearing a knit ski hat, gray scarf, and a blue and red coat.  She further testified that when she first saw Ronny, his hands were in his pocket but then he pulled out a gun and asked "where's it at?"  Around this same time, Burkes awoke from the commotion and then exited the bedroom, observing Royes against the wall and a short male in front of Weems.  In the process of pulling Weems out of the male's way, Burkes was shot in the stomach.  According to Weems, she pushed Ronny and "was like what did you do that for, why did you do that," and then she dropped to the floor to help Burkes, who had fallen.

**{¶7}** Weems called 911. Upon the arrival of Cleveland Heights police officer Robert Butler, Weems provided a physical description of Royes and the shooter, describing the shooter as "5 feet 5 inches and dark-skinned black male with acne." Weems retrieved Burkes's cell phone and provided Officer Butler with "Jay's" phone number. The police matched the number to Alexander Royes, who also fit the physical description provided by Weems.

**{¶8}** The police arrested Royes the following day.

### B. Royes Implicates Thirst; Police Determine Ronny is Thirst

**{¶9}** Cleveland Heights police detective Michael Reese led the investigation into the shooting of Burkes. Det. Reese testified that he interviewed Royes, who provided the name of the second suspect by his street name — "Thirst." Det. Reese and his team interviewed approximately 15 people to determine the identity of Thirst and ultimately determined that Thirst was Ronny. Det. Reese further testified that Ronny matched the physical description of the shooter provided at the scene on January 12.

### C. Royes Testifies Thirst Shot Burkes

**{¶10}** The state called Royes as a witness in its case in chief. After Royes refused to answer the state's questions, the trial court granted the state's motion to declare him a court witness. Royes, who had been tried earlier and acquitted of all the charges, had testified in his own trial, placing himself at the scene on January 12, 2014. But according to Royes, he "had no clue what was going to happen that day." Royes further acknowledged that he previously testified that Thirst shot Burkes. Royes stated,

however, that he did not know Ronny and that Ronny was not Thirst. According to Royes, Thirst was another person named Jaylin. Royes testified that he had seen Jaylin at a party the night before the shooting but that they never spoke. According to Royes, he next saw Jaylin while walking into Burkes's building and that Jaylin then forced himself into the apartment and shot Burkes. Royes testified that he ran from the apartment, fleeing in his car and driving to Richmond Heights, Euclid, and then to the Morris Black Apartments, a housing project in Cleveland.

### D. Ronny's Cell-Phone Records Place His Phone Near the Shooting and Traveling Same Route as Royes after Shooting

{¶11} Through his investigation, Det. Reese discovered the cell phone number used by Ronny, and after securing a search warrant, requested data records associated with the cell phone from Verizon. The state offered the testimony of Todd Wiles, a crime analyst with the Cleveland Police Department, who analyzed and mapped Ronny's cell phone records of January 12, 2014 (the day of the shooting), between the hours of 11:54 a.m. and 2:06 p.m. According to Wiles's testimony, the data associated with an incoming call at 12:50:56 indicated that the phone utilized a cell tower located approximately one and one-half miles from the crime scene. The subsequent activity on the phone also correlated with the geographical locations that Royes placed himself in following the shooting.

### E. Ronny Identifies Himself as Thirst in Making A Call Through the Jail Phone System

**{¶12}** The state introduced testimony establishing that Ronny referred to himself as Thirst. Specifically, Sergeant Phillip Christopher, who works in the Cuyahoga County Sheriff's Department and supervises jail visitation, testified that Ronny identified himself as Thirst when first placing a phone call through the inmate phone system. The state played the call for the jury to hear at trial.

### F. Eyewitness Identification

**{¶13}** On January 23, 2014, after the police identified Ronny as a suspect, a photo lineup consisting of six photos was presented to Weems, who identified Ronny (along with another person) as a "possible" suspect in the first viewing. Upon being showed a second viewing, the blind administrator noted "strongest" regarding Weems's identification of Ronny.

**{¶14}** On March 24, 2014, while Burkes was still in the hospital, Burkes made an identification of Ronny as being at the scene; Burkes, however, identified Royes as the shooter. Burkes later contacted police in August 2014 and provided a new statement, indicating that Ronny was the shooter and that he was heavily medicated when he provided his first identification. Burkes acknowledged that he had observed a photo of Ronny online in an article about the case prior to giving his amended statement in August.

**{¶15}** Burkes and Weems both testified at trial that they were 100 percent certain that Ronny was the shooter.

### G. Neutral Witness Places Royes and Ronny Together the Night Before Shooting

{¶16} The state offered the testimony of Shynice Arthus, who testified that Ronny and Royes were both at her house the night before the shooting. Specifically, Arthus testified that she had a "kickback" party on January 11, 2014, to celebrate her 21st birthday. Arthus testified that Ronny was at the party and that "we called him Thirst." She further testified that Royes was at the party too.

### H. Verdict and Sentence

{¶17} The jury found Ronny guilty on all the counts except aggravated robbery as contained in Count 6. The trial court further found Ronny guilty of having weapons while under disability and the notice of prior conviction specification. At sentencing, the trial court merged the two felonious assault counts with the attempted murder count, and merged the aggravated burglary count with the other aggravated burglary count. The state elected to proceed on Count 1 (attempted murder) and Count 3 (aggravated burglary in violation of R.C. 2911.11(A)(1)). The trial court ultimately imposed an aggregate sentence of 28 years in prison on all the counts.

## II. Law and Analysis

### A. Jurisdiction

{¶18} Before reaching the merits of Ronny's appeal, we initially address the issue raised sua sponte by the dissent regarding this court's jurisdiction to hear the appeal.

**{¶19}** This court sua sponte granted leave for a delayed appeal after determining that Ronny had filed an untimely notice of appeal. According to the dissent, "[t]here is no authority for an appellate court to sua sponte grant leave for a delayed appeal in the Rules of Appellate Procedure." The dissent, however, improperly applies App.R. 5(A) and downplays the discretion vested in an appellate court to grant leave to file a delayed appeal in criminal proceedings. App.R. 5(A)(1) recognizes only three classes of cases where a delayed appeal may be taken, which includes criminal proceedings. With respect to an appeal from a criminal proceeding, the rule expressly states that "[a]fter the expiration of the thirty day period provided by App.R. 4(A) for the filing of a notice of appeal as of right, an appeal may be taken by a defendant with leave of the court to which the appeal is taken * * *." While App.R. 5(A)(2) describes the manner as to how a party shall file for leave, that section does not prohibit a court from granting leave sua sponte under App.R. 5(A)(1).

**{¶20}** Contrary to the dissent's assertion, the Ohio Supreme Court has not declared that an appellate court lacks jurisdiction to sua sponte grant leave for a delayed appeal after a party has filed its untimely notice of appeal in a criminal proceeding. The dissent's conclusion that Ronny's failure to strictly comply with App.R. 5 barred this court from sua sponte granting leave is not supported by *State ex rel. McGinty v. Eighth Dist. Court of Appeals*, 142 Ohio St.3d 100, 2015-Ohio-937, 28 N.E.3d 88. That case does not even discuss App.R. 5. Nor does *McGinty* render our court's previous decisions that have allowed delayed appeals under App.R. 5, even in the absence of strict

compliance with App.R. 5(A), "no longer * * * valid."

**{¶21}** Conversely, aside from our own district recognizing that strict compliance with App.R. 5(A) is not necessary for the court to grant leave for a delayed appeal, at least one other appellate district has recognized the same. *State v. Alexander*, 10th Dist. Franklin Nos. 05AP-192 and 05AP-245, 2005-Ohio-5997, ¶ 25 ("Although the procedures set out in App.R. 3, 4, and 5 were not followed in this case, and no motion for leave to appeal was filed at the time the notice of appeal was filed, we conclude that appellant has adequately set forth reasons for the failure to perfect an appeal as of right.").

**{¶22}** Accordingly, because this court granted Ronny leave to file his delayed appeal, we have jurisdiction to decide the merits of the appeal as set forth in App.R. 5.

## B. Sufficiency and Weight of the Evidence

**{¶23}** In his first assignment of error, Ronny argues that the state's evidence against him was not sufficient and that his convictions were against the manifest weight of the evidence. We disagree.

**{¶24}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶25}** In reviewing a claim challenging the manifest weight of the evidence,

[t]he question to be answered * * * is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Emphasis sic. Internal quotes and citations omitted.) *Leonard* at ¶ 81.

{¶26} Aside from broadly arguing that the state failed to present sufficient evidence to sustain the convictions, Ronny does not identify any element that the state failed to prove other than identity. Because Ronny does not contend that the state failed to establish any of the other elements of the crimes for which he was convicted, we limit our analysis to whether the evidence was sufficient to establish, beyond a reasonable doubt, that Ronny was the shooter.

{¶27} We find that the record establishes the identity of Ronny and that any rational trier of fact could have found that Ronny was the shooter. Indeed, the state presented the testimony of two eyewitnesses who identified Ronny in court as the person who shot Burkes. To the extent that Ronny claims that their identifications were not credible, we do not consider credibility when reviewing a verdict for sufficiency of the evidence. *State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶ 27. Rather, we "examine the evidence admitted at trial to determine whether such evidence, *if believed*, would convince the average mind of the defendant's guilt beyond a reasonable doubt." (Emphasis added.) *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

{¶28} Further, apart from the eyewitness testimony, the state also offered considerable circumstantial evidence that linked Ronny to the crimes. Royes implicated Thirst as the shooter. The state established through Ronny's own admission in a jail call, as well as through a neutral witness, that Ronny was known as Thirst. Additionally, the state presented the cell phone records that placed Ronny in the vicinity of the crime scene as well as in the same locations as Royes following the shooting.

{¶29} Construing the evidence in a light most favorable to the state, we conclude that a rational jury could have determined, beyond a reasonable doubt, that Ronny was the shooter.

{¶30} Turning to Ronny's manifest weight of the evidence challenge, we likewise find that the jury did not lose its way. While Burkes's identification may have been more questionable, given his significantly less time to observe Ronny, Weems's identification did not suffer from the same deficiencies. Moreover, the state did not rely solely on eyewitness identification testimony in this case. Ronny completely ignores the other circumstantial evidence presented by the state that linked him to the crimes. As for Royes testifying at trial that Ronny was a different Thirst and not the shooter, the jury easily could have disregarded Royes's testimony as not credible. Royes clearly did not want to implicate Ronny. Notably, Royes also testified that he did not know Ronny and that he had never seen him prior to the court proceedings, yet another neutral witness placed the two at the same party the night before the shooting.

{¶31} After examining the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice in convicting Ronny.

{¶32} The first assignment of error is overruled.

### C. Testimony of Sgt. Christopher

{¶33} In his second assignment of error, Ronny argues that the trial court erred in allowing the testimony of Sgt. Christopher, who established that Ronny identified himself as Thirst in his jail calls. Ronny contends that "he had already stipulated to being called 'Thirst'" and therefore the admission of this testimony, which allowed the jury to know that Ronny had been in jail, was "unduly prejudicial." We disagree.

{¶34} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Even relevant evidence may be excluded under Evid.R. 403(A), if its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *See also State v. Combs*, 62 Ohio St.3d 278, 284, 581 N.E.2d 1071 (1991).

{¶35} A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.), citing *Black's Law Dictionary* 11 (8th Ed.Rev.2004). Further, this abuse of discretion must have materially prejudiced the defendant. *State v. Lowe*, 69 Ohio St.3d 527, 532,

634 N.E.2d 616 (1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984).

{¶36} Contrary to Ronny's assertion, there was no stipulation that his nickname was Thirst. While Ronny's defense counsel conceded in his opening statement that Ronny's nickname was Thirst, defense counsel's statement is not evidence. *See State v. Copeland*, 8th Dist. Cuyahoga No. 102952, 2016-Ohio-1537, ¶ 18. Nor did Ronny agree to a stipulation of the fact. Because the state's case focused around Royes's statement that Thirst was the shooter, evidence linking Ronny with the nickname Thirst was crucial to the prosecution. We cannot say the trial court abused its discretion in allowing this evidence.

{¶37} The second assignment of error is overruled.

### D. Designation of Royes as a Court Witness

{¶38} In his final assignment of error, Ronny argues that the trial court erred in allowing the state to call Royes as a state witness and allowing the state "to engage in direct examination" of Royes. This argument has no merit.

{¶39} Evid.R. 614 authorizes the court to call a witness whom a party might otherwise call on the party's "suggestion" that the witness would then recant another prior statement favorable to that party. *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 43 (2d Dist.), citing *State v. Kiser*, 6th Dist. Sandusky No. S-03-028, 2005-Ohio-2491. Evid.R. 614(A) provides: "[t]he court may,

on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

{¶40} Upon taking the stand, Royes refused to answer any questions, indicating that he was invoking his Fifth Amendment right against self-incrimination. Royes, however, had been tried nine days earlier and acquitted of the charges heard before the jury. The trial court subsequently found Royes not guilty of the having weapons while under disability count. Based on Royes being acquitted of all the charges and double jeopardy attaching, the trial court explained that there was no impediment to his testifying. Royes nonetheless refused to testify. At that point, the trial court granted the state's motion to declare Royes a court witness in order to cross-examine him on his previous testimony that he gave in his own trial.

{¶41} The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify. *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18. "A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A)." *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 18. A trial court does not abuse its discretion in calling a witness as a court's witness "'when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statment[.]'" *State v.*

*Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 44 (2d Dist.), quoting *State v. Schultz*, 11th Dist. Lake No. 2003-L-156, 2005-Ohio-345, ¶ 29.

**{¶42}** We cannot say that the trial court abused its discretion in calling Royes as a court witness. Royes was an eyewitness to the shooting who previously testified as to the identity of the shooter. His appearance was important to the proper determination of the case and his clear reluctancy to testify against Ronny made him a principal candidate for application of Evid.R. 614(A). To the extent that Ronny complains that he was somehow prejudiced by the prosecutor asking questions that seemed more like "direct examination" than "cross-examination," we find no merit to this baseless claim. As countered by the state, Evid.R. 614(A) entitles parties to cross-examine a witness; the rule, however, does not impose a blanket requirement that they must. While the prosecutor's questioning of Royes involved a mixture of leading as well as nonleading questions, we find no error. We further find no basis to Ronny's unsupported claim that declaring Royes as a court witness somehow violated his due process rights.

**{¶43}** The third assignment of error is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (SEE SEPARATE OPINION)


SEAN C. GALLAGHER, J., DISSENTING:

**{¶45}**  I respectfully dissent.  We lack jurisdiction to entertain the merits of the current appeal.  The notice of appeal was filed untimely and without a motion for leave to file the delayed appeal pursuant to App.R. 5(A).   As a result, I would dismiss instead of addressing the merits of the cursory arguments presented in the untimely appeal.

**{¶46}** On March 12, 2015, the trial court entered the final sentencing entry, which included the assignment of appellate counsel.  On April 28, Ronny filed his notice of appeal, well outside the 30-day time frame in which an appeal as a matter of right may be filed.  Our jurisdiction in a direct appeal from a criminal case is invoked through the filing of an appeal within 30 days of the final appealable order.  *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 17; App.R. 4(A).

**{¶47}** In the absence of a timely appeal, an appellant may invoke appellate jurisdiction by filing a motion for a delayed appeal pursuant to App.R. 5(A).  A motion

for delayed appeal is a necessary prerequisite to invoking an appellate court's jurisdiction. *State v. Saunders*, 8th Dist. Cuyahoga No. 96643, 2012-Ohio-104, ¶ 4 (failure to file a motion for delayed appeal deprives an appellate court of jurisdiction to entertain the appeal); *see also State v. Holland*, 8th Dist. Cuyahoga No. 89667, 2008-Ohio-920, ¶ 4; *State v. Lopez*, 8th Dist. Cuyahoga No. 85306, 2005-Ohio-3711, ¶ 15; *State v. Molina*, 8th Dist. Cuyahoga No. 83166, 2004-Ohio-1110, ¶ 11; *State v. Thompson*, 8th Dist. Cuyahoga No. 82274, 2003-Ohio-4405, ¶ 3; *State v. Delgado*, 8th Dist. Cuyahoga No. 79642, 2002-Ohio-2609, ¶ 23; *State v. Chapman*, 8th Dist. Cuyahoga No. 79812, 2002-Ohio-1081.

{¶48} The proper procedure to perfect a delayed appeal is not complicated. In the motion for a delayed appeal, the appellant is required to explain the reason for the failure to timely appeal. App.R. 5(A)(2); *Cleveland v. Black*, 8th Dist. Cuyahoga No. 82457, 2003-Ohio-4197, ¶ 14. Concurrently with that motion, the party must also file a notice of appeal with the clerk of the trial court and a copy of the same with the court of appeals. App.R. 5(A)(2); *State v. Bell*, 11th Dist. Trumbull No. 2010-T-0037, 2010-Ohio-1798, ¶ 12. "Compliance with App.R. 5(A) is mandatory and jurisdictional." *State v. Parks*, 8th Dist. Cuyahoga No. 65464, 1994 Ohio App. LEXIS 2166, *3 (May 19, 1994), citing *State v. Wallace*, 43 Ohio St.2d 1, 330 N.E.2d 697 (1975); *see also State v. Fisher*, 46 Ohio App.2d 279, 349 N.E.2d 327 (10th Dist.1975) (motion for delayed appeal must be filed concurrently with notice of appeal or court is without jurisdiction to review appeal).

Only then can the appellate court exercise its discretion in determining whether to accept the delayed appeal or issue any order in furtherance of the appeal.

{¶49} No App.R. 5(A) motion was filed with this court. Instead, Ronny appealed a nunc pro tunc entry issued on April 24 meant to correct a minor typographical error in the March 12 final sentencing entry. It has long been held that issuing a nunc pro tunc sentencing entry does not restart the appellate clock. *Whitlach Invest. Corp. v. Am. Trading & Invest. Corp.*, 9th Dist. Summit No. 24294, 2009-Ohio-203, ¶ 9. A nunc pro tunc entry merely corrects and retroactively replaces the prior entry to memorialize what actually occurred. *Id.*; *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 19; *State v. Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382, ¶ 8; *State v. Blankenship*, 4th Dist. Ross No. 13CA3364, 2013-Ohio-5261, ¶ 7; *In re Petition for Inquiry into Certain Practices*, 150 Ohio St. 393, 398, 83 N.E.2d 58 (1948). The time for appeal runs from the original entry, not the filing date of the nunc pro tunc. *Lester* at paragraph two of the syllabus. In this case, a final judgment of conviction was entered pursuant to Crim.R. 32(C) on March 12, 2015, and Ronny was provided his appellate rights and appellate counsel. The right to appeal was triggered by the original sentencing entry.

{¶50} Upon initial review, after having to reinstate the dismissed appeal because Ronny failed to file a praecipe in accordance with Loc.App.R. 9(B), this court improvidently, and sua sponte, granted leave to file a delayed appeal after the jurisdictional irregularity was identified by the court, not the parties. Although this

process of sua sponte granting leave to appeal after the fact seems expedient, this court was without jurisdiction to issue such an order.

{¶51} An appellate court, much less any court, cannot create its own jurisdiction. Courts of appeal only have "such jurisdiction as may be provided by law." Ohio Constitution, Article IV, Section 3(B)(2). "[W]hile in the general sense, this court has jurisdiction to hear appeals in criminal cases, that jurisdiction must be invoked by the timely filing of a notice of appeal." *State v. Mansaray*, 8th Dist. Cuyahoga No. 90647, 2009-Ohio-1237, ¶ 13. "The failure to file a timely notice of appeal is a jurisdictional requirement that cannot be ignored." *Id.*; *see also State v. Starcic*, 8th Dist. Cuyahoga No. 72742, 1998 Ohio App. LEXIS 2411, *6-7 (June 4, 1998) (string citing cases stating appellate courts lack jurisdiction over untimely appeals). Because the original time to appeal had expired and no App.R. 5(A) motion for delayed appeal was filed, we lacked jurisdiction. *Parks*, 8th Dist. Cuyahoga No. 65464, 1994 Ohio App. LEXIS 2166, at *3; *Black*, 8th Dist. Cuyahoga No. 82457, 2003-Ohio-4197, at ¶ 14; *State v. Ellis*, 5th Dist. Guernsey No. 2007-CA-46, 2008-Ohio-7002, ¶ 10. ("In a criminal case, where the defendant has failed to meet the time requirements of App.R. 4(A), the unqualified right to an appeal set out in App.R. 3(A) is extinguished and an appeal may be taken only by leave of court in compliance with App.R. 5(A).")

{¶52} Further, this court's authority to issue any order in furtherance of an appeal is entirely dependent on the proper invocation of the court's jurisdiction in the first place. *State ex rel. McGinty v. Eighth Dist. Court of Appeals*, 142 Ohio St.3d 100,

2015-Ohio-937, 28 N.E.3d 88, ¶ 13.  A court lacking jurisdiction over the appeal also lacks jurisdiction to issue any order to confer jurisdiction upon itself.  In *McGinty*, this court attempted to issue a stay of the trial court proceedings after an appeal was filed. The Ohio Supreme Court unambiguously held that an appellate court may not exercise judicial power unless its jurisdiction was properly invoked in the first place.  *Id.* Because the state attempted to appeal an interlocutory order for which this court lacked jurisdiction, there was no jurisdiction to exercise any judicial power.  *Id.* at ¶ 27.  The same principle applies to the current case in which this court exercised judicial power to sua sponte grant leave for a delayed appeal despite the lack of jurisdiction over the appeal filed.

{¶53} Over the years, a practice has evolved in which some panels from this court granted leave for a delayed appeal despite the failure to comply with App.R. 5(A), citing to the interests of justice.  *See, e.g., Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382, at ¶ 8; *State v. Foster*, 8th Dist. Cuyahoga No. 59423, 1991 Ohio App. LEXIS 5465, *2 (Nov. 14, 1991); *State v. Richardson*, 8th Dist. Cuyahoga No. 59804, 1992 Ohio App. LEXIS 135, *3 (Jan. 16, 1992); *State v. Westerfield*, 8th Dist. Cuyahoga No. 38122, 1978 Ohio App. LEXIS 8554, *2 (Dec. 28, 1978).  Those decisions no longer remain valid in light of the Ohio Supreme Court's mandate.  *McGinty*, 142 Ohio St.3d 100, 2015-Ohio-937, 28 N.E.3d 88, at ¶ 13.  These aberrant decisions conflict with the longstanding approach to appellate jurisdiction as recognized by this and other courts: the failure to timely perfect a criminal appeal or file a motion for a delayed appeal is a

jurisdictional limitation that requires immediate dismissal of the appeal. *See, e.g., State v. Edwards*, 157 Ohio St. 175, 181, 105 N.E.2d 259 (1952) (motion for delayed appeal was only remedy to perfect an untimely appeal); *State v. Blackwood*, 8th Dist. Cuyahoga No. 83208, 2004-Ohio-2160, ¶ 4; *Chapman*, 8th Dist. Cuyahoga No. 79812, 2002-Ohio-1081; *State v. Johnson*, 8th Dist. Cuyahoga No. 91567, 2009-Ohio-3088, ¶ 3, fn. 1; *Cleveland v. Leisinger*, 8th Dist. Cuyahoga Nos. 55476, 55477, 55478, 55479, 55480, 55481, and 55482, 1989 Ohio App. LEXIS 2217,*4-5 (June 8, 1989); *State v. Snyder,* 8th Dist. Cuyahoga No. 39946, 1979 Ohio App. LEXIS 11742, *2 (Nov. 29, 1979); *State v. Harvey*, 68 Ohio App.2d 170, 171, 428 N.E.2d 437 (8th Dist.1980); *State v. Watson*, 11th Dist. Trumbull No. 2015-T-0066, 2015-Ohio-2904, ¶ 11-12; *Thorpe v. Ohio State Warden*, 10th Dist. Franklin No. 04AP-557, 2004-Ohio-6983, ¶ 5-6; *In re T.B.*, 9th Dist. Summit No. 23990, 2008-Ohio-2026, ¶ 8; *State v. Haymon*, 5th Dist. Stark No. 2005CA00163, 2006-Ohio-3296, ¶ 11.

**{¶54}** In the instant case, this court sua sponte granted Ronny leave to file an appeal without the defendant ever complying with App.R. 5(A). As this court has recognized, an appellant must comply with App.R. 5(A) as a jurisdictional prerequisite and App.R. 5(A) contemplates the motion being filed concurrently with the notice of appeal. *Parks,* 8th Dist. Cuyahoga No. 65464, 1994 Ohio App. LEXIS 2166, at *3; *State v. Thurman*, 8th Dist. Cuyahoga No. 103578, 2016-Ohio-3064, ¶ 4 (state failed to file the motion for leave concurrent with the notice of appeal and therefore the trial court lacked jurisdiction to grant the belated motion); *State ex rel. Steffen v. Judges of the Court of*

*Appeals for the First Appellate Dist.*, 126 Ohio St.3d 405, 2010-Ohio-2430, 934 N.E.2d 906, ¶ 27. There is no authority for an appellate court to sua sponte grant leave for a delayed appeal in the Rules of Appellate Procedure. *See* App.R. 5(A). Accordingly, this court lacks jurisdiction, and the appeal should be dismissed.