[Cite as *State v. Jenkins*, 2018-Ohio-483.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105226

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL J. JENKINS

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585521-B

**BEFORE:** McCormack, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** February 8, 2018

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

Stephen P. Hardwick
Assistant Public Defender
Ohio Public Defender Office
250 East Broad St., Suite 1400
Columbus, OH 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Daniel T. Van
Mary Weston
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} This is a delayed appeal based on preindictment delay. Defendant-appellant Michael Jenkins argues that his trial counsel was ineffective for not filing a motion to dismiss based on preindictment delay, that the trial court erred in not dismissing his case for preindictment delay, and in the alternative, that his conviction was supported by insufficient evidence. For the reasons that follow, we find merit to Jenkins's ineffective assistance of counsel claim and therefore reverse his conviction. Jenkins's additional assignments of error are therefore moot.

{¶2} In March 2016, Jenkins's codefendant, Oscar Dickerson, filed an identical appeal. This court ordered his conviction vacated. *State v. Dickerson*, 2016-Ohio-807, 60 N.E.3d 699 (8th Dist.) ("*Dickerson I*"). The Ohio Supreme Court remanded that case for application of *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688. On remand, this court reached the same conclusion and vacated Dickerson's conviction, finding that his counsel was ineffective for failing to timely file a motion to dismiss based on preindictment delay. *State v. Dickerson*, 2017-Ohio-177 ("*Dickerson II*"). The state appealed that decision, and the Ohio Supreme Court declined to accept the case for review on October 11, 2017.

## Factual and Procedural History

{¶3}   The following facts were elicited at trial; for purposes of this appeal, the facts in this case do not materially differ from those in *Dickerson II.*   The victim, J.R., testified that on July 2, 1994, the date of the incident, she was 16 years old.   She had spent the day and evening with her boyfriend at his house, drinking and smoking marijuana.   She left her boyfriend's house some time after midnight to walk home.   Her boyfriend walked with her approximately halfway home.   She proceeded to walk the remainder of the approximately 40-minute walk home alone.

{¶4}   When she was approximately ten minutes from her house, three males in a car approached her and called out to her as the car drove past.   The car "circled back" a few times, and J.R. testified that she "waved them off."   J.R. started to cut across an open area to avoid the car, but the car pulled over near a library.   J.R. testified that the car was driven by an older white male.   Two younger black males were also in the car.

{¶5}   One of the younger men got out of the car and approached J.R., offering her a ride home.   She initially declined, but the young man persisted.   At approximately 1:30 a.m., J.R. ultimately got into the car and told the men where she lived.   J.R. testified that she was "not thinking" when she got in the car; she also testified that she accepted the ride because she was scared.   The car proceeded to drive past her street.   J.R. testified that she again told the driver where she lived as they passed her street, but she was ignored.

{¶6}   The car eventually pulled into a hotel parking lot.   The driver of the car, later identified as Jerry Polivka, got out of the car and proceeded to rent a hotel room.   A receipt indicated that the room was rented at approximately 4:42 a.m.   J.R. remained in the car with the other two men, the then-18-year-old defendant-appellant Michael Jenkins and his then-19-year-old codefendant Oscar Dickerson.   J.R. testified that she did not know the men, but they identified themselves as "Mike" and "Oscar" or "O," respectively.

{¶7}   When Polivka returned to the car, he drove to a back entrance of the hotel, where Dickerson and Jenkins walked J.R. into a hotel room.   Polivka drove off, leaving J.R., Dickerson, and Jenkins at the hotel.

{¶8}   J.R. testified that she tried to think of a way to get out of the situation.   At one point, she asked to go outside to smoke a cigarette, hoping to escape, but one of the young men accompanied her.   J.R. accepted crack cocaine from him to put on the end of her cigarette, which she testified that she smoked in an attempt to "numb" herself for what she believed "was going to happen."   Dickerson and Jenkins proceeded to have vaginal intercourse with J.R. in the bathroom and bedroom of the hotel room.

{¶9} After both men had intercourse with J.R., she took a shower in the hotel bathroom.   When she returned to the living area of the hotel room, Jenkins and Dickerson were asleep.   J.R. took that opportunity to escape from the hotel room and go home.

{¶10} J.R. testified that when she got home, she tried to run upstairs to the bathroom, but her mother confronted her and demanded to know where she had been. J.R. then told her mother what had happened at the hotel room.

{¶11} J.R.'s mother testified that she was on the porch when J.R. returned home that morning and that J.R., who usually avoided her, sat down on the porch and looked like she wanted to talk. According to J.R.'s mother, J.R. then voluntarily told her what had happened. J.R.'s mother then called the police, who responded to the call at J.R.'s home. Subsequently, J.R. went to the hospital and was treated for sexual assault. The responding officers went to the hotel, where they found Dickerson and Jenkins asleep in the hotel room. Both men were arrested.

{¶12} The police obtained the receipt for the hotel room from a hotel clerk. The receipt identified Jerry Polivka as the individual who rented the room. Polivka was named as a suspect in the initial report, but was never contacted by the police in connection with this case.

{¶13} After J.R. left the hospital, she went with her mother to meet with a detective to discuss the incident. J.R. testified that the detective was "very rude" and shared her opinion of the incident, leaving J.R. feeling humiliated and prompting her to tell the detective to "forget it if she wasn't going to help." J.R.'s mother, however, testified that the detective was respectful.

{¶14} Following this meeting, the detective noted in the case file that no further investigation would take place.

{¶15} Several days later, J.R. was walking to her boyfriend's house when someone she recognized as "Mike" pulled up alongside her in a car. J.R. testified that Mike seemed angry and "forced" her to sign a note recanting her statements about the incident. J.R. signed the note and immediately reported this incident to the police. The police made an intimidation report but never followed up on the incident.

{¶16} J.R. testified that shortly after the July 2 events, she found out that she was pregnant and did not follow up with the police because she wanted to "get on with her life."

{¶17} On August 24, 2012, J.R.'s rape kit was submitted to BCI for DNA testing as part of the Sexual Assault Kit Testing Initiative. DNA analysis showed Dickerson's DNA on vaginal and rectal swabs and Jenkins's DNA on the victim's bathing suit bottoms. The detective assigned to the case discovered that Polivka was deceased.

{¶18} On May 15, 2014, Dickerson and Jenkins were each indicted on one count of rape for vaginal intercourse, one count of rape for fellatio, two corresponding counts of complicity to commit rape, and one count of kidnaping. Both defendants pleaded not guilty to all charges.

{¶19} On November 5, 2014, counsel for Dickerson filed a motion to dismiss based on preindictment delay. Jenkins's counsel did not file a similar motion at this or any other point in the proceedings.

{¶20} The docket in Dickerson's case does not indicate a ruling on Dickerson's motion to dismiss. In his appeal to this court, Dickerson characterized the motion as

having been denied as untimely, and this court adopted that characterization.   *Dickerson II* at ¶ 2.   A review of the transcript shows that the trial court declined to consider the motion because it was untimely.

**{¶21}** A jury trial took place from November 12 to November 18, 2014.   The jury found both defendants guilty of one count of rape for vaginal intercourse, one count of complicity for each other's rape conviction, and one count of kidnaping.   The jury found both defendants not guilty of the rape and complicity charges as they related to fellatio.

**{¶22}** Jenkins was sentenced to eight years in prison.   In December 2016, Jenkins filed a motion for delayed appeal.   This court granted the motion, and this appeal follows.   For the reasons that follow, we agree with Jenkins's first assignment of error and reverse his conviction.

## Legal Analysis

**{¶23}** In Jenkins's first assignment of error, he argues that his case is materially indistinguishable from *Dickerson II*, in which this court held that "counsel was deficient for not timely filing a motion to dismiss and that there was a reasonable probability that it would have been granted had it been timely filed.   *Id.* at ¶ 63.

**{¶24}** In Jenkins's second assignment of error, he argues that the trial court committed plain error when it failed to dismiss the case for preindictment delay.   A trial court commits plain error under Crim.R. 52(B) where, "'but for the error, the outcome of the trial clearly would have been otherwise.'"   *State v. Kibble*, 8th Dist. Cuyahoga No. 103822, 2017-Ohio-12, ¶ 21, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804

(1978), paragraph two of the syllabus. To support his assertion that this was plain error, Jenkins relies on the arguments from his first assignment of error.

{¶25} Jenkins's third assignment of error presents an alternative argument for our review, arguing that there was insufficient evidence to show the element of force or threat of force necessary for his conviction.

{¶26} Because the first two assignments of error both deal with preindictment delay, the state responded to them together. The state argues that it cannot be said that the failure to timely file a motion to dismiss was seriously flawed or deficient, as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984), or that it resulted in a manifest miscarriage of justice, as required to show plain error.

{¶27} While preindictment delay is at the heart of the first two assignments of error, we decline to address them together because they require the application of different standards of review. Further, our agreement with Jenkins that his counsel was ineffective renders his second and third assignments of error moot.

{¶28} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 687-688.

**{¶29}** Here, Jenkins must demonstrate that his trial counsel performed deficiently by failing to raise the issue of preindictment delay, and that there was a reasonable probability of success had his counsel timely presented that issue to the trial court. *State v. Mack*, 101 Ohio St. 3d 397, 2004-Ohio-1526, 805 N.E.2d 1108, ¶ 31.

**{¶30}** Preindictment delay violates due process only when it is unjustifiable and causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The Ohio Supreme Court has established a burden-shifting framework for analyzing preindictment delay due process claims. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). Under this framework, a defendant is first required to present evidence of actual prejudice; if actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id*.

**{¶31}** The mere "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice," because those are manifestations of the prejudice inherent in any delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 105, citing *United States v. Marion*, 404 U.S. 307, 326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Supreme Court of Ohio has rejected the argument that "any claim of actual prejudice based on the death of a potential witness is too speculative to succeed unless the defendant can establish precisely what that witness would testify to and that the testimony would be directly exculpatory." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 27. Instead, courts are to undertake a case-by-case consideration of the

relevance of the lost evidence and its purported effect on the defense.  *Id.*, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52.

**{¶32}** "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense."  *Jones* at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984).   The *Luck* court found that the grounds set forth by the defense in that case — deaths of witnesses, the fading of memories, and the loss of evidence — "when balanced against the other admissible evidence" established that the defendant suffered actual prejudice.  *Luck* at 157-158. Therefore, applying the *Strickland* standard to the preindictment delay issue in this case, we review to determine whether there was a reasonable probability that the court would have found actual prejudice had Jenkins's counsel filed a motion to dismiss based on preindictment delay.

**{¶33}** Jenkins relies on Dickerson's arguments with respect to establishing actual prejudice.   This argument is based in large part on the unavailability of Jerry Polivka, who was deceased at the time of trial.   Specifically, Jenkins argues that Polivka would have been able to fill in significant gaps in the state's timeline and testify as to what happened in the hours before the sexual conduct occurred.

**{¶34}** The state argues that this is insufficient to establish actual prejudice because even if Polivka had been available at trial, neither Jenkins nor Dickerson would have been able to elicit testimony from him because he would have been indicted and on trial for

this incident as well. We are not persuaded by this argument. We echo the majority in *Dickerson II* in noting that unlike Dickerson or Jenkins, Polivka was never arrested or contacted in 1994 despite being named as a suspect in the initial police report, and even if he had been indicted in connection with this case, he likely would have been offered a plea deal in exchange for his testimony, similar to the plea deals rejected by both Jenkins and Dickerson. *Dickerson II* at ¶ 51-53.

{¶35} The state, citing the dissent in *Dickerson II*, notes that even if Polivka's testimony had been available, it would not have bolstered Jenkins's defense because Polivka could not have testified in any credible manner as to whether the victim consented to the sex while at the hotel. We do not disagree that Polivka could not have testified to this specific issue. Nevertheless, such testimony is not the only way in which Polivka's testimony could have bolstered Jenkins's defense. At trial, defense counsel repeatedly emphasized the fact that J.R. accepted drugs from the defendants, seemingly in an attempt to characterize the incident as a sex-for-drugs exchange.

{¶36} Further, Jenkins argues that because the victim got into the car with Polivka and the defendants at approximately 1:30 a.m. and the hotel receipt shows that the room was rented at 4:42 a.m., Polivka would have been able to fill in this significant gap in the timeline of the case. The victim was unable to remember what occurred during that time, and the state did not otherwise put forth any theory as to what else might have transpired before the group arrived at the hotel.

{¶37} Because of this, the record includes little to no information about what occurred in Polivka's car on the way to the motel; Polivka could have testified regarding the behavior of J.R., Jenkins, and Dickerson in the car. While we reiterate that such testimony would not have directly contradicted J.R.'s testimony that the later sexual conduct in the hotel room was not consensual, we nevertheless acknowledge that it could have bolstered Jenkins's theory of the case or cast doubt on J.R.'s testimony and credibility. In this way, Polivka's testimony regarding the incident very likely could have supported the defense's theory of the case.

{¶38} It is also worth noting that although the state argues that Polivka's unavailability cannot constitute actual prejudice because he would not have been able to testify as to whether J.R. consented in the hotel room, the state's theory of the case relied on the entirety of the evening to establish that the encounter with Jenkins was not consensual. At various points throughout the trial, prosecutors put forth a theory of the case that emphasized that Jenkins, Dickerson, and Polivka were acting together. Indeed, to the extent that the kidnapping offense was committed when J.R. got into Polivka's car, Polivka's testimony would have been critical.

{¶39} Because we agree with our prior decision in *Dickerson II* that the unavailability of Jerry Polivka constitutes actual prejudice, we move on to a discussion of whether the state has produced evidence of a justifiable reason for the delay in prosecution.

{¶40} The state argues that the nearly 20-year delay was justified because there was new evidence in the case. A delay in the commencement of prosecution by the state would be found unjustified under one of two conditions: (1) when it is done in an attempt to gain a tactical advantage over the defendant, or (2) when the state "through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *Luck* at 158, citing *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468. This case satisfies the elements of the second condition.

{¶41} The state offers two reasons for the delay. First, it asserts that threats made to J.R. by Jenkins and Dickerson were the reason the case did not go forward in 1994. Second, they note that the Cleveland Police Department did not do DNA testing in 1994, so even if the case had gone to trial, it would have been without DNA evidence to corroborate J.R.'s testimony. This, according to the state, would have been "absurd." We are not persuaded by either reason.

{¶42} We echo the majority in *Dickerson II* in noting that within days after the alleged intimidation, J.R. contacted the police to report the incident. The record reflects that the state effectively closed the case shortly after J.R.'s meeting with a detective in 1994, before the alleged intimidation. Despite the state's argument here that it was unable to procure J.R.'s cooperation, the record reflects that no investigative steps were taken between J.R.'s meeting with a detective in 1994 and the rape kit testing in 2014.

**{¶43}** Additionally, although a witness testified at trial that the police department did not conduct DNA testing in 1994, this fact alone does not render the DNA evidence "new." DNA testing was available in 1994, and the state does not point to any reason the police department would have been unable to send the evidence to a third party for testing. Even if that were not a feasible option for the department at the time, the state's own witness testified that the department began doing DNA testing in 1999 or 2000. If this is accurate, the state would still be unable to justify the 14- to 15-year delay in prosecution.

**{¶44}** The state would have this court reject its earlier analysis established in *Dickerson II* and adopt the reasoning of the dissent in that case, despite making no attempt to distinguish this case from that one. Because we are bound by our own precedent, undisturbed by the Ohio Supreme Court, and because we agree with the rationale of *Dickerson II* as discussed above, we agree with Jenkins that his trial counsel was ineffective.

**{¶45}** Because we find that Jenkins's trial counsel was ineffective for failing to file a timely motion to dismiss based on preindictment delay, his conviction is reversed. Jenkins's second and third assignments of error are moot.

**{¶46}** This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION ATTACHED)


SEAN C. GALLAGHER, J., CONCURRING:

{¶47} This case has a tortured procedural history that bears noting if only to prevent this issue from arising again. Jenkins failed to timely perfect an appeal as a matter of right under App.R. 4(A) following his conviction. Generally speaking, a defendant in a criminal case may file a motion for a delayed appeal in that situation. App.R. 5(A).

{¶48} In this case, however, it was the state that timely perfected an appeal on a question of law concerning the sentence imposed. In *State v. Jenkins*, 8th Dist. Cuyahoga No. 102462, 2015-Ohio-4583, the appellate panel rejected the state's claim and affirmed the conviction and the sentence imposed. Under App.R. 3(C)(1), any appellee intending to change the judgment or order timely appealed must file a cross-appeal, which is the alternate method of obtaining an appeal as of right. App.R. 3(C). The cross-appeal is mandatory in those situations. Further, there is no exception to the

ten-day deadline for the cross-appeal set forth in App.R. 4(B).  App.R. 5(A), which authorizes a criminal defendant to file a delayed appeal in certain situations, expressly applies to appeals arising under App.R. 4(A).   Had the drafters intended to create a right to file a delayed cross-appeal, that could have been achieved by expanding App.R. 5(A) to extend the deadline under App.R. 4(B).

{¶49} Jenkins's failure to file the cross-appeal precludes him from seeking a delayed cross-appeal to change the judgment of conviction.   Jenkins's remedy was to file a motion to reopen his earlier appeal based on the ineffective assistance of appellate counsel who failed to preserve Jenkins's rights.   App.R. 5(A) cannot be used to obtain a second appeal as of right.   *Rocky River v. Garnek*, 8th Dist. Cuyahoga No. 99072, 2013-Ohio-1565, ¶ 15.

{¶50} Having said that, in order to invoke this court's jurisdiction under App.R. 5(A), a defendant must concurrently file an appeal along with a motion for delayed appeal.   *State v. Parks*, 8th Dist. Cuyahoga No. 65464, 1994 Ohio App. LEXIS 2166 (May 19, 1994), 3; *but see State v. Ronny*, 8th Dist. Cuyahoga No. 102968, 2016-Ohio-3448, ¶ 19 (appellate court may invoke its own jurisdiction over an untimely appeal by sua sponte granting a delayed appeal).   Jenkins has done so in this case and thereby invoked our jurisdiction.   Although a defendant must generally set forth the reason for failing to perfect an appeal as a matter of right, our resolution of the properly filed motion falls under this court's discretionary powers.   *State v. Adams*, 9th Dist.

Lorain No. 14CA010709, 2016-Ohio-336, ¶ 4; *see, e.g., State v. Williams*, 8th Dist. Cuyahoga No. 105025, 2017-Ohio-2662.

{¶51} In this case, the state has not opposed Jenkins's motion for a delayed appeal, and accordingly, it has forfeited any arguments addressing the merits of that motion. Because we have jurisdiction over the matter and the state has not objected to the exercise of our discretion, there are no jurisdictional impediments to addressing the substantive matters at hand.

{¶52} On that point, I acknowledge that *State v. Dickerson,* 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177 ("*Dickerson II*"), constrains our analysis; however, I agree with the rationale expressed by the dissent. As the defendant in *Dickerson* failed to demonstrate, Jenkins, too, is unable to articulate how the missing witness's testimony would have minimized or eliminated the impact of the state's case. Nonetheless, *Dickerson II* is controlling authority, and therefore, I reluctantly concur with the judgment.