JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Walter Carter, Jr. appeals from his conviction after a jury found him guilty of having a weapon while under disability.
 {¶ 2} Carter presents two assignments of error, claiming his trial counsel rendered ineffective assistance, and his conviction is based upon insufficient evidence and is against the manifest weight of the evidence.
 {¶ 3} Upon a review of the record, this court is constrained to agree with Carter's first assignment of error. Since his conviction is reversed on this basis, his second assignment of error is moot, and this case is remanded to the trial court for further proceedings.
 {¶ 4} Carter's conviction results from a police investigation into unusual activity conducted at a house located at 2436 East 66th Street in Cleveland, Ohio. On November 2, 2005, Det. Anthony Spencer went to the house in response to "complaints" that it was being used as an illegal gambling and drinking facility.
 {¶ 5} Spencer only recently had been promoted to his position. In fact, as he acknowledged, "this was my first case that I was operating on by [my] own."[1] He simply walked into the house, sat down and watched "what was going on," and observed where people were "getting their drinks from." *Page 4 
 {¶ 6} Spencer also saw a man "walking around" with a "weapon fastened on his hip in a holster," whom Spencer "figured" was "the security for the place." However, Spencer "didn't want to blow my cover by asking * * *." Spencer elaborated that "from what I learned on the streets, you take your chances going into an after hours spot. You never know who is packing." Spencer added that he "thought" the man with the weapon "was walking around working for the establishment."[2]
 {¶ 7} After a short time, Spencer went to the kitchen at the rear of the house, where he saw a man he identified as Carter behind a "homemade wooden bar." Spencer "pulled out some money, asked for a beer, got the beer, [and] handed the money over." Spencer spoke with Carter briefly; Spencer explained his presence by commenting that someone "down the street" told him that "this was where the party is." Carter replied "you got that right" and that "was pretty much" the entire conversation.
 {¶ 8} The following night, the police returned with a search warrant for the premises. Prior to executing the warrant, Spencer went in "to make sure that the main guy was still there, which would have been Walter Carter, and so once again I just walked in through the front door, purchased a beer, sat down, *Page 5 
had the drink, walked back out and notified the rest of the units" to proceed.
Spencer testified that he "didn't observe any weapons" before he left on this occasion.
 {¶ 9} In executing the search warrant, Spencer and the other officers immediately "secure[d] everyone"; the officers "wanted to make sure there weren't any weapons floating around because [Spencer] had seen some the night before so everyone in the house was handcuffed and searched quickly." When the searches produced no weapons, Spencer "pointed out Mr. Carter as the proprietor that I purchased the beer from and we proceeded to search the house for drugs, money and contraband."
 {¶ 10} The record reflects that while Spencer and other officers conducted the search, Carter and some others "were seated around a [dining room] table" under the watch of Det. Erin O'Donnell. O'Donnell was "keeping an eye on the persons that were being detained." O'Donnell looked at Carter and "said listen, we know there is a gun in the house. You might as well just tell us where it is before things get torn up more than they need to be."
 {¶ 11} As O'Donnell testified, "at which time he responded to me it's behind the dresser in the bedroom that our [sergeant] was in." When O'Donnell informed her superior of Carter's admission, "my sergeant and I pulled the dresser forward and the gun was behind it." *Page 6 
 {¶ 12} Carter subsequently was indicted on one count of having a weapon while under disability. He entered a not guilty plea at his arraignment and counsel was assigned to represent him.
 {¶ 13} The record reflects that after his appointment, trial counsel filed no written motions on Carter's behalf. Trial counsel did, however, appear at a total of eight pretrial hearings before the proceeding commenced before a jury.
 {¶ 14} At the outset, trial counsel stipulated to Carter's 2003 conviction for drug trafficking. The state thereafter presented the testimony of Spencer and O'Donnell, and introduced into evidence the gun and the "money box" seized from the house. Carter presented no evidence.
 {¶ 15} The jury subsequently found Carter guilty of the charge, and the trial court ultimately sentenced him to a two-year prison term.
 {¶ 16} Carter appeals his conviction with two assignments of error.
 {¶ 17} "I. The Defendant was denied his right to effective representation by counsel, as protected by the Sixth Amendment to the United Stated Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 18} "II. The Defendant's conviction was not supported by sufficient evidence, and was against the manifest weight of the evidence, in violation of his rights to due process of law, as protect[ed] by theFourteenth Amendment of the *Page 7 
United States Constitution and Article I, Section 16 of the Ohio Constitution."
 {¶ 19} In his first assignment of error, Carter argues that his trial counsel rendered constitutionally ineffective assistance. In particular, Carter challenges counsel's failure to file a motion to suppress evidence.
 {¶ 20} Carter contends that the record does not support a conclusion that, prior to making an admission concerning the weapon found at the house, he had been provided with the warnings required pursuant toMiranda v. Arizona (1966), 384 U.S. 436. He asserts that without his admissions, the state could not have sustained its burden to prove his guilt of the offense of having a weapon while under disability. Under the circumstances of this case, this court is constrained to agree.
 {¶ 21} A claim of ineffective assistance of counsel requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, paragraph three of the syllabus. *Page 8 
 {¶ 22} The burden is on appellant to prove ineffectiveness of counsel.State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy.
 {¶ 23} With the foregoing in mind, the record in this case with regard to counsel's omissions demonstrates counsel's performance fell below an objectively reasonable standard of representation. Prior to trial, counsel not only failed to file a motion to suppress, but failed to file either any discovery or any pretrial motions whatsoever. During trial, counsel also permitted hearsay testimony to be introduced without objection; the testimony was presented as proof of Carter's guilt.
 {¶ 24} Although counsel is not required to file a motion to suppress evidence in every case, nevertheless, where the record "provides no clear understanding of when * * * Miranda warnings were given," a motion is necessary in order to determine the admissibility of the defendant's incriminating statements. State v. Scott, Warren App. No. CA2005-12-134,2007-Ohio-1094; cf., State v. Flors (1987), 38 Ohio App.3d 133.
 {¶ 25} A motion to suppress was not filed in this case, and, thus, not the subject of an evidentiary hearing. In addition, the record does not otherwise reflect the circumstances under which Carter made incriminating statements. *Page 9 Scott, supra, at footnote 1; Parma v. Kline (Mar. 7, 1996), Cuyahoga App. Nos. 68998 and 68999. The record does reflect that, on direct examination, the prosecutor asked O'Donnell her reason for addressing Carter "about the gun," O'Donnell answered, "Because we were advised by snitches that he was the one that was running the house, the gambling house." Counsel raised no objection to this statement, which was presented as proof of his client's guilt.
 {¶ 26} Had counsel filed any written discovery motions, the result might have been otherwise, but, under the circumstances presented in this case, since the entire record reflects that, but for counsel's errors, the result might have been otherwise, a conclusion may be drawn that counsel's performance fell below an objective standard of reasonable representation. Id. Carter, therefore, meets the first requirement to establish his claim. State v. Bandy, Lake App. No. 2007-L-089, 2008-Ohio-1494, ¶ 31.
 {¶ 27} Carter next must demonstrate that he was prejudiced by counsel's ineffectiveness. In this case, neither of the two detectives testified that Carter received any cautions concerning his right against self-incrimination before he acknowledged an awareness of the firearm's location in the house. Both detectives indicated that everyone in the house, including Carter, merely was "detained" while the search was being conducted. While under this "detention," Carter responded to O'Donnell's suggestion that he tell them the location of "the *Page 10 
gun." O'Donnell testified without objection that she asked Carter this question because "snitches" told the police Carter "ran" the gambling house.
 {¶ 28} It is significant to note that the state provided no other evidence to link Carter with the weapon. As trial counsel pointed out during closing argument, neither of the state's witnesses knew if Carter either owned or actually resided in the house, and neither of the state's witnesses ever saw Carter with a weapon. Moreover, Spencer did not indicate during his testimony whether the man acting as "security for the establishment" the previous night may also have been present during the search.
 {¶ 29} It is apparent from the transcript that counsel limited his defense of Carter. Counsel chose simply to cross-examine the state's witnesses with a view, as he stated during opening argument, of asserting that "[t]here [were] a host of other things that the State of Ohio could have done in this case to remove any doubt as to whether or not Walter Carter was in possession of the gun * * *."
 {¶ 30} Such a defense, however, was doomed in light of Carter's admission, O'Donnell's hearsay testimony, and the trial court's instruction to the jury at the conclusion of trial. The jury was instructed that, "Knowledge of an illegal good on one's property is sufficient to show constructive possession. However, the mere fact that property is located within premises does not of itself constitute constructive possession. It must also be shown that the person was conscious *Page 11 
of * * * the presence of the object." Significantly, defense counsel raised no objections to the jury instructions.
 {¶ 31} Consequently, the record demonstrates counsel's ineffectiveness, both in failing to file any discovery motions, in particular, a motion to suppress evidence, and in failing to raise objections during trial, prejudiced Carter's defense. Parma v.Kline, supra; State v. Scott, supra, ¶ 20.
 {¶ 32} Carter's first assignment of error, accordingly, is sustained.
 {¶ 33} The resolution of his first assignment of error renders his second assignment of error moot. Id., ¶ 29; State v. Yates,166 Ohio App.3d 19, 2006-Ohio-1424, ¶ 13.
 {¶ 34} Carter's conviction is reversed, and this case is remanded for further proceedings.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Quotes are taken from the transcript of Carter's trial.
[2] The record reflects defense counsel raised no objections to Spencer's statements when Spencer provided either opinion or hearsay testimony. *Page 1