[Cite as *State v. Jenkins*, 2022-Ohio-297.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                         No. 109421

    v.                                              :

MICHAEL J. JENKINS,                 :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** February 3, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-14-585521-B

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Daniel T. Van, Assistant Prosecuting
Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Erika B. Cunliffe, Assistant Public Defender, *for
appellant.*

EMANUELLA D. GROVES, J.:

**{¶ 1}** Defendant-appellant Michael Jenkins ("Jenkins") appeals from the
trial court's decision to grant plaintiff-appellee the state of Ohio's ("the state")
motion to reinstate his conviction, following the court's denial of his motion to

dismiss for preindictment delay.[1]  For the reasons that follow, we affirm in part, reverse in part, and remand.

## Factual and Procedural History

{¶ 2}  This case is the latest in a series of appeals from Jenkins 2014 convictions for rape and kidnapping that stemmed from a 1994 incident.  On May 15, 2014, Jenkins and his codefendant Oscar Dickerson ("Dickerson") were each indicted on two counts of rape, one count of kidnapping, and two counts of complicity.

{¶ 3}  The facts in this case have been completely and comprehensively set out in *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216 (8th Dist.) ("*Jenkins II*") and *State v. Dickerson*, 2016-Ohio-807, 60 N.E.3d 699 ("*Dickerson I*").  We summarize below:[2]

> The following facts were elicited at trial * * *.  The victim, J.R., testified that on July 2, 1994 * * * she was 16 years old.  She had spent the day and evening with her boyfriend at his house, drinking and smoking marijuana. She left her boyfriend's house some time after midnight to walk home.  Her boyfriend walked with her approximately halfway home.  She proceeded to walk the remainder of the approximately 40-minute walk home alone.
>
> When she was approximately ten minutes from her house, three males in a car approached her and called out to her as the car drove past.  The car "circled back" a few times, and J.R. testified that she "waved them off." J.R. started to cut across an open area to avoid the car, but the car pulled over near a library. J.R. testified that the car was driven by an older white male.  Two younger black males were also in the car.

---

[1] This is a companion appeal to *State v. Dickerson*, 8th Dist. Cuyahoga No. 109434 ("*Dickerson V*").

[2] *Jenkins II* at ¶ 3-21.

One of the younger men got out of the car and approached J.R., offering her a ride home. She initially declined, but the young man persisted. At approximately 1:30 a.m., J.R. ultimately got into the car and told the men where she lived. J.R. testified that she was "not thinking" when she got in the car; she also testified that she accepted the ride because she was scared. The car proceeded to drive past her street. J.R. testified that she again told the driver where she lived as they passed her street, but she was ignored.

The car eventually pulled into a hotel parking lot. The driver of the car, later identified as Jerry Polivka, got out of the car and proceeded to rent a hotel room. A receipt indicated that the room was rented at approximately 4:42 a.m. J.R. remained in the car with the other two men, the then-18-year-old defendant-appellant Michael Jenkins and his then-19-year-old codefendant Oscar Dickerson. J.R. testified that she did not know the men, but they identified themselves as "Mike" and "Oscar" or "O," respectively.

When Polivka returned to the car, he drove to a back entrance of the hotel, where Dickerson and Jenkins walked J.R. into a hotel room. Polivka drove off, leaving J.R., Dickerson, and Jenkins at the hotel.

J.R. testified that she tried to think of a way to get out of the situation. At one point, she asked to go outside to smoke a cigarette, hoping to escape, but one of the young men accompanied her. J.R. accepted crack cocaine from him to put on the end of her cigarette, which she testified that she smoked in an attempt to "numb" herself for what she believed "was going to happen." Dickerson and Jenkins proceeded to have vaginal intercourse with J.R. in the bathroom and bedroom of the hotel room.

After both men had intercourse with J.R., she took a shower in the hotel bathroom. When she returned to the living area of the hotel room, Jenkins and Dickerson were asleep. J.R. took that opportunity to escape from the hotel room and go home.

J.R. testified that when she got home, she tried to run upstairs to the bathroom, but her mother confronted her and demanded to know where she had been. J.R. then told her mother what had happened at the hotel room.

J.R.'s mother testified that she was on the porch when J.R. returned home that morning and that J.R., who usually avoided her, sat down on the porch and looked like she wanted to talk. According to J.R.'s

mother, J.R. then voluntarily told her what had happened. J.R.'s mother then called the police, who responded to the call at J.R.'s home. Subsequently, J.R. went to the hospital and was treated for sexual assault. The responding officers went to the hotel, where they found Dickerson and Jenkins asleep in the hotel room. Both men were arrested.

The police obtained the receipt for the hotel room from a hotel clerk. The receipt identified Jerry Polivka as the individual who rented the room. Polivka was named as a suspect in the initial report, but was never contacted by the police in connection with this case.

After J.R. left the hospital, she went with her mother to meet with a detective to discuss the incident. J.R. testified that the detective was "very rude" and shared her opinion of the incident, leaving J.R. feeling humiliated and prompting her to tell the detective to "forget it if she wasn't going to help." J.R.'s mother, however, testified that the detective was respectful.

Following this meeting, the detective noted in the case file that no further investigation would take place.

Several days later, J.R. was walking to her boyfriend's house when someone she recognized as "Mike" pulled up alongside her in a car. J.R. testified that Mike seemed angry and "forced" her to sign a note recanting her statements about the incident. J.R. signed the note and immediately reported this incident to the police. The police made an intimidation report but never followed up on the incident.

J.R. testified that shortly after the July 2 events, she found out that she was pregnant and did not follow up with the police because she wanted to "get on with her life."

On August 24, 2012, J.R.'s rape kit was submitted to BCI for DNA testing as part of the Sexual Assault Kit Testing Initiative. DNA analysis showed Dickerson's DNA on vaginal and rectal swabs and Jenkins's DNA on the victim's bathing suit bottoms. The detective assigned to the case discovered that Polivka was deceased.

On May 15, 2014, Dickerson and Jenkins were each indicted on one count of rape for vaginal intercourse, one count of rape for fellatio, two corresponding counts of complicity to commit rape, and one count of kidnaping. Both defendants pleaded not guilty to all charges.

On November 5, 2014, counsel for Dickerson filed a motion to dismiss based on preindictment delay. Jenkins's counsel did not file a similar motion at this or any other point in the proceedings.

The docket in Dickerson's case does not indicate a ruling on Dickerson's motion to dismiss. In his appeal to this court, Dickerson characterized the motion as having been denied as untimely, and this court adopted that characterization. Dickerson II at ¶ 2. A review of the transcript shows that the trial court declined to consider the motion because it was untimely.

A jury trial took place from November 12 to November 18, 2014. The jury found both defendants guilty of one count of rape for vaginal intercourse, one count of complicity for each other's rape conviction, and one count of kidnaping. The jury found both defendants not guilty of the rape and complicity charges as they related to fellatio.

**{¶ 4}** On December 29, 2014, the court sentenced Jenkins to eight years in prison on each count, to be served concurrently. This sentence was imposed under Am.Sub.H.B. No. 86, the sentencing regime that became effective on September 30, 2011, and was in effect at the time of sentencing in 2014.

**{¶ 5}** The state appealed, arguing that the trial court erred by ordering a definite term of incarceration because Jenkins would have been subject to an indefinite sentence under the sentencing regime as it existed at the time of the 1994 offense. Jenkins did not cross-appeal his conviction. This court affirmed Jenkins' conviction. *State v. Jenkins*, 8th Dist. Cuyahoga No. 102462, 2015-Ohio-4583 ("*Jenkins I*").[3]

---

[3] The state also appealed Dickerson's sentence, arguing that the trial court erred by ordering a definite term of incarceration contrary to the sentencing scheme that existed in 1994. Dickerson cross-appealed, arguing that the trial court erred in denying his motion to dismiss for preindictment delay and that his trial counsel was ineffective for not timely filing the motion. This court vacated Dickerson's conviction, finding that his counsel was deficient for not timely filing the motion to dismiss and that there was a reasonable

**{¶ 6}** On December 2, 2016, Jenkins filed a delayed appeal arguing, in relevant part, that the trial court erred in failing to dismiss the case based on prejudicial preindictment delay and that his trial counsel was ineffective for failing to file a motion to dismiss based on prejudicial preindictment delay. *Jenkins II* at ¶ 1. Noting that the court "agreed" with the finding in *Dickerson II* that the death of Jerry Polivka constituted "actual prejudice," this court concluded that Jenkins' counsel was ineffective for failing to file a motion to dismiss for preindictment delay. *Id.* at ¶ 1, 45. Accordingly, this court reversed Jenkins' convictions and remanded the matter to the trial court "for further proceedings consistent with this opinion." *Id.* at ¶ 46.

**{¶ 7}** The state filed a motion for reconsideration, asking this court to clarify its decision. Specifically, the state asked this court to correct the portion of its opinion that found that Jenkins suffered actual prejudice. The state argued that for *Jenkins II* to be in line with our finding in *Dickerson II* the court should find that Jenkins would have had a reasonable probability of success had he filed a timely motion to dismiss for preindictment delay, not that Jenkins suffered actual prejudice. Furthermore, the state argued that on remand, Jenkins would have an

---

probability that it would have been granted had it been timely filed, given that Dickerson "had a strong, viable claim of actual prejudice." *Dickerson I.* The state appealed this decision to the Ohio Supreme Court, and the Supreme Court vacated *Dickerson I* and remanded the case "for application of *State v. Jones,* [148 Ohio St.3d 167, 2016-Ohio-5105, [69 N.E.3d 688]]." *State v. Dickerson,* 146 Ohio St.3d 1493, 2016-Ohio-5585, 57 N.E.3d 1172.

On remand and after applying *Jones*, this court reached the same conclusion, finding that Dickerson's counsel was ineffective.

opportunity to have a hearing on the issue of prejudicial preindictment delay. Jenkins filed a motion in opposition, arguing that the decision was clear and there was no need for further hearings on the issue of preindictment delay. This court summarily denied the state's motion for reconsideration, and the case was remanded to the trial court.

{¶ 8} On remand, on February 16, 2018, Jenkins filed a motion to dismiss based on preindictment delay. Jenkins argued that the physical evidence supported that the sexual encounter with J.R. was consensual. Jenkins also argued that he was prejudiced by the preindictment delay due to Polivka's death. In this regard, Jenkins posited that Polivka could cast doubt on the state's case by explaining what happened in the car. Additionally, Jenkins argued, at the very least Polivka could have cast doubt on the kidnapping charge and could have cast doubt on J.R.'s version of what occurred in the hotel room.

{¶ 9} The state opposed the motion, and the trial court held hearings on the motion on February 22 and May 3, 2018, respectively. At the hearings, the trial court took evidence on the issue of preindictment delay in the form of trial transcripts and heard arguments from counsel.

{¶ 10} On June 4, 2018, the trial court denied Jenkins' motion, finding that Jenkins did not suffer prejudice due to the delay. The state then filed a motion to reinstate Jenkins' conviction. On July 6, 2018, the trial court denied the motion. The state sought leave to appeal the denial of its motion, and this court granted leave. Jenkins also appealed the trial court's denial of his motion to dismiss for

preindictment delay. This court dismissed Jenkins' appeal, finding that the trial court's denial of his motion to dismiss for preindictment delay was not a final appealable order. *State v. Jenkins*, 8th Dist. Cuyahoga No. 107409, 2019-Ohio-2735 ("*Jenkins III*"). Likewise, this court dismissed the state's appeal, finding that the trial court's denial of the state's motion to reinstate Jenkins' convictions was not a final appealable order. *State v. Jenkins*, 8th Dist. Cuyahoga No. 107518, 2019-Ohio-2737.

{¶ 11} On November 22, 2019, the state filed a motion asking the trial court to reconsider the denial of its motion to reinstate the convictions. On November 25, 2019, the trial court held a hearing on the motion. On December 31, 2019, the trial court granted the state's motion to reinstate Jenkins' conviction. Its judgment entry stated, in part:

> [U]pon correcting the pretrial error by a full presentation and consideration of the motions to dismiss, there were no proceedings consistent with the appellate decisions left to conduct. If the motions had been granted, the indictments against Jenkins and Dickerson would simply have been dismissed by a judgment entry without further proceedings. But the motions were denied and the error-free trial that ordinarily would have followed such a denial has already taken place. Therefore, the only thing left is to reinstate the defendants' convictions without further proceedings because it is consistent with the decisions by the court of appeals and with the jury's decisions beyond a reasonable doubt about the guilt of both defendants.

{¶ 12} Jenkins now appeals and assigns the following two errors for review:

## Assignment of Error No. 1

The trial court erred, and thereby, violated Jenkins' right to due process when it failed to dismiss this case for prejudicial pre-indictment delay.

## Assignment of Error No. 2

The trial court erred by reinstating Michael Jenkins's conviction when this court had reversed and remanded it after concluding that he had suffered actual prejudice due to pre-indictment delay.

## Law and Analysis

{¶ 13} In his first assignment of error, Jenkins argues his right to due process was violated when the trial court failed to dismiss the case for prejudicial preindictment delay. In his second assignment of error, Jenkins argues that the trial court erred in reinstating his conviction after that conviction was reversed and remanded.

{¶ 14} In support of his first assignment of error, Jenkins argues that pursuant to the law-of-the-case doctrine, this court's prior decisions in Jenkins' case established that he had suffered actual prejudice from preindictment delay. Therefore, according to Jenkins, the trial court's denial of his motion to dismiss for preindictment delay violated the law-of-the-case doctrine and ran afoul of this court's mandate in *Jenkins II.* Specifically, Jenkins argues the trial court should have found he was actually prejudiced by the period of preindictment delay and dismissed the case without a hearing.

{¶ 15} Jenkins' attempt to distinguish the court's opinion in *Jenkins II* with *State v. Carter*, 8th Dist. Cuyahoga No. 91019, 2008-Ohio-6955, must fail. In

*Carter*, the court found that defense counsel was ineffective by failing to file a motion to suppress statements the defendant had made to the police. *Carter*, 8th Dist. Cuyahoga No. 91019, 2008-Ohio-6955, ¶ 23. The court further found that because a motion to suppress was not filed, and no evidentiary hearing was held in the trial court, the record did not reflect the circumstances under which the defendant made the incriminating statements. *Id.* at ¶ 25. With critical information absent from the record, the appellate court was unable to determine whether the statements should have been suppressed and remanded the case for further proceedings. *Id.* at ¶ 34. In *Jenkins II*, remand was necessary because our determination of ineffective of assistance of counsel included an *analysis* of preindictment delay; but did not *decide* that issue.

**{¶ 16}** The state properly identified this distinction when it contrasts the holding in *Jenkins II* with the holding in *Dickerson II*, noting that a finding of actual prejudice differs from a finding that Dickerson had a "reasonable probability of success" if he had timely filed his motion. Focusing primarily on the holding in *Dickerson II*, the state argues that finding that a motion had a reasonable probability of being granted is different from a finding that it *should* be granted. We agree.

**{¶ 17}** While we are mindful that the definitive language in *Jenkins II* strongly signaled that the court believed had Jenkins' counsel timely filed a motion to dismiss, it would have been granted, this does not change the issue that was before the court in *Jenkins II*. The discrete issue was whether Jenkins received ineffective assistance of counsel; the court was not making an ultimate determination of

whether Jenkins had suffered actual prejudice as a result of preindictment delay. The opinion in *Jenkins II*, therefore was constrained by the legal standard of whether there was a "reasonable probability" that a motion to dismiss for preindictment delay would have been granted.

{¶ 18} The court in *Jenkins II* addressed the theoretical question of a motion that had never been filed nor fully litigated in the trial court. Jenkins never raised the issue and his codefendant Dickerson's motion was untimely and never litigated. It is undisputed that the remand ultimately provided the parties an opportunity to present new evidence and arguments to satisfy their respective burdens related to the motion to dismiss. This was an opportunity the parties did not have at the appellate level, because the scope of this court's review was limited to whether Jenkins had received effective assistance of counsel. Therefore, the trial court neither violated the law-of-the-case doctrine nor ran afoul of this court's mandate in *Jenkins II* when it held a hearing on the motion to dismiss on remand. In light of this subtle but significant distinction, we disagree with Jenkins that the trial court's decision violated the law-of-the-case doctrine.

{¶ 19} We now address whether the trial court erred in denying Jenkins' motion to dismiss for preindictment delay. Because we find Jenkins met his burden in showing that he was prejudiced by the period of preindictment delay, we agree with Jenkins to the extent that the trial court erred in its failure to find actual prejudice by the preindictment delay. This court applies a de novo standard of review to a trial court's decision regarding legal issues in a motion to dismiss for

preindictment delay. *State v. Jabbar*, 8th Dist. Cuyahoga No. 109642, 2021-Ohio-1191, ¶ 28, citing *State v. Knox*, 8th Dist. Cuyahoga Nos. 103662 and 103664, 2016-Ohio-5519, ¶ 12. Therefore, we will independently review the trial court's decision without any deference to its determination. *Id.*, quoting *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5. We do, however, afford deference to the trial court's findings of fact. *Id.*, citing *State v. Walker*, 8th Dist. Cuyahoga No. 106414, 2018-Ohio-3669, ¶ 15. Therefore, we must accept the trial court's factual findings if they are supported by competent and credible evidence in the record. *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2002-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶ 20}** Although the Sixth Amendment to the United States Constitution on its face provides no protection to those who have not been charged, "[w]hen unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial, despite the state's initiation of prosecution within the statutorily defined limitation period, the Due Process Clause affords the defendant additional protection." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 11, citing *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). An unjustifiable delay between the commission of an offense and a defendant's indictment for committing that offense, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶ 21} Courts apply a two-part test to determine whether a delay in prosecution has violated the defendant's due process rights. The defendant bears the initial burden of showing that they were substantially and actually prejudiced by the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). If the defendant establishes actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Luck*, 15 Ohio St.3d at 154, 472 N.E.2d 1097, citing *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

{¶ 22} A determination of actual prejudice involves a "'delicate judgment'" and a case-by-case consideration of the particular circumstances involved. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 20, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *Marion*, 404 U.S. at 325, 92 S.Ct. 455, 30 L.Ed.2d 468. Further, "a court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*

{¶ 23} The Ohio Supreme Court has repeatedly acknowledged the difficult burden placed on defendants particularly because proof of prejudice is "always speculative." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100, citing *United States v. Montgomery*, 491 Fed.Appx. 683, 691 (6th Cir.2012), quoting *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir.1997). While acknowledging the inherently speculative nature of actual prejudice arguments, the court has also clarified that a successful claim of actual prejudice cannot be purely

speculative: "the mere possibility that 'memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 16, quoting *Jones* at ¶ 21. Nevertheless, a defendant is not required to establish precisely what an unavailable witness would testify to, or that the testimony would be directly exculpatory. *Id.*, citing *Jones* at ¶ 27. Instead, actual prejudice exists when "missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984) at 157-158.

**{¶ 24}** In denying Jenkins' motion to dismiss for preindictment delay, the trial court held that there is little doubt that Polivka would have "relevant testimony" to offer. Despite this, though, the court found that it could not conclude that this testimony would minimize or eliminate the state's evidence or bolster the defense. The court supported this conclusion primarily with the following findings: 1) Polivka likely would have been indicted with Jenkins and Dickerson and thus unable to testify at trial; 2) nothing in the record supports the conclusion that Polivka would contradict J.R.'s version of events; 3) even if Polivka contradicted J.R.'s version of events, this is insufficient to establish actual prejudice because he would be unable to testify about what happened in the hotel room. After thorough review, we conclude that the evidence presented to the trial court contradicts this holding.

**{¶ 25}** We begin with the finding that Polivka likely would have been unable to testify as a result of his status as a codefendant. The conclusion that Polivka would have been unavailable as a witness is rejected. This conclusion is wholly unsupported by competent and credible evidence in the record, contradicts *Jenkins II*, and imposes a new burden on defendants in preindictment cases. The court in *Jenkins II* agreed with the court in *Dickerson II* which resolved this argument when it was made by the state by reasoning that, although one of the officers assigned to the case had a name and address for Polivka, he made no attempt to contact him and did not consider him a suspect. *Dickerson II* at ¶ 52. Without any attempt by law enforcement to contact Polivka to speak with him, let alone indict him, there is no basis for concluding that he would have been unavailable as a witness by virtue of his status as a codefendant. Even if the court's conclusion were supported by competent and credible evidence, we are aware of no case in which a defendant is required to show not only that a deceased witness would provide relevant testimony that would minimize the impact of the state's case, but also that the witness would be able to overcome any alleged procedural barriers to testifying on the defendant's behalf. The burden for a defendant attempting to establish they suffered actual prejudice as a result of preindictment delay is already "nearly insurmountable." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100. We decline to further heighten this burden here.

**{¶ 26}** Next, we will address the trial court's second and third findings together. With respect to the trial court's finding that nothing in the record supports

the conclusion that Polivka could have provided a version of events that contradicted J.R.'s, we find this to be a misapplication of the standard articulated by the Ohio Supreme Court in *Luck* and *Jones*. In *Luck*, the Ohio Supreme Court found that the defendant was prejudiced by a 15-year preindictment delay for murder. The court balanced the alleged sources of actual prejudice — the death of two key witnesses, the fading of memories and changing of appearances, and the loss of all of the recorded interviews with potential witnesses compiled shortly after the murder — against the other admissible evidence in the case and found that Luck had suffered actual prejudice. *Luck* at 157. Specifically, the court found that even though the state had circumstantial evidence linking Luck to the victim's death, "it cannot be said that the missing evidence or the dead witnesses would not have minimized or eliminated the impact of the state's circumstantial evidence." *Id.*

{¶ 27} As with the missing witness in the instant case, Luck did not show exactly what the missing witnesses would have testified to in support of her defense. Instead, Luck merely argued that one witness, a friend who was allegedly in the victim's apartment when she was killed, "was the one person who could have helped her in this matter but he is dead." *Id.* Likewise, the other witness was a doctor who allegedly treated Luck for a hand injury on or around the date of the murder. Luck did not explain how exactly the doctor's testimony would be relevant, let alone how it would have bolstered her defense. Instead, the Ohio Supreme Court found that Luck was "obviously prejudiced by not being able to seek verification of her story from [her friend] and thereby establish mitigating factors or a defense to the charge

against her." *Id.* at 158. When the court reiterated the relevant standard in *Jones*, it looked to *Luck*, stating that Luck suffered actual prejudice "although there was no record establishing what the witness would have actually testified to." *Jones* at ¶ 25.

{¶ 28} The *Jones* standard makes clear that a defendant's arguments in support of an actual prejudice claim cannot be based on "mere speculation" because the theoretical possibility of lost evidence is insufficient to establish actual prejudice. *Id.* at ¶ 27. In cases in which the defendant's claims regarding lost evidence or unavailable witnesses are entirely unsupported by the record, this court has correctly found that those claims are too remote and speculative to establish actual prejudice. For example, in a recent case, this court found that a defendant's arguments that law enforcement could have investigated the car in which he allegedly raped the victim if he had been indicted at the time of the incident was insufficient to establish actual prejudice where, according to the defendant's own trial testimony, he did not have a car at the time of the incident. *State v. Danzy*, 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, ¶ 25. The *Danzy* Court further held that the unavailability of two unknown individuals who allegedly found the victim and drove her to the hospital did not constitute actual prejudice because the individuals were never identified, let alone identified as witnesses, and therefore there was nothing in the record indicating what their unavailable testimony might have offered to the defense. *Id.*, citing *State v. Knox*, 8th Dist. Cuyahoga No. 107414, 2019-Ohio-1246, ¶ 37.

**{¶ 29}** This is not a case where Jenkins' actual prejudice is based on unfounded or entirely speculative claims. Instead, this case closely resembles *Luck*. Jenkins does not assert what exactly Polivka would have testified to at trial. Like *Luck*, though, Jenkins has clearly shown that he was prejudiced because he was unable to seek verification of his story from someone who was with him on the night of the incident. Furthermore, *Luck*'s claim that one of the unavailable witnesses in her case was present for the murder was unsubstantiated. Jenkins, however, has pointed to evidence in the record, including the victim's own testimony, showing that Polivka was present when the victim first encountered the defendants, drove them around, and ultimately rented the hotel room where the alleged rape took place. Therefore, Jenkins' claim that he suffered actual prejudice is significantly stronger than *Luck*'s successful claim because it is corroborated by documentary evidence and testimony in the record.

**{¶ 30}** Further, we are cognizant of the unique nature of rape cases in the context of preindictment delay. This court has noted that, "unlike other crimes of violence, rape cases where consent is the only issue often turns on a credibility contest between the accused and the accuser." *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 19. Recognizing the particular relevance of witness credibility in this context, the *Crymes* Court found that missing phone records from hours before the alleged rape in that case constituted actual prejudice because, although the records obviously could not have provided direct proof of consent, they

"would help appellee *verify* his account of the event, thereby bolstering the defense." *Id.* at ¶ 20, citing *Luck* at 157-158 and *Jones* at ¶ 28.

{¶ 31} Similarly, as in *Jenkins II* we reach the same conclusion here. While Polivka's testimony almost certainly could not have provided an account of what took place in the hotel room, he likely would have testified about how exactly J.R. came to be in the backseat of his car and what transpired during the hours between 1:30 a.m. when J.R. got in the car and 4:42 a.m. when Polivka rented a hotel room for J.R. and the defendants. Likewise, as the court in *Jenkins II* noted, Polivka was with the victim for a number of hours during the course of the alleged crimes and the victim herself was unable to account for that time. *Jenkins II* at ¶ 36-37. If Polivka were able to provide an account of the stretch of several hours that was not accounted for by J.R., this unquestionably would have minimized or eliminated the impact of the state's evidence by contradicting a significant aspect of its key witness's testimony. Finally, we note that Jenkins was also charged with kidnapping. Arguably, this kidnapping began from the moment in which J.R. entered the car and alleged that Polivka passed her street and continued driving away from her house. We reiterate that a defendant is not required to show exactly *how* lost evidence or unavailable testimony would support his case; nor is it required that the evidence would have been directly exculpatory. *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 16, quoting *Jones* at ¶ 27. Most importantly, the defendant must show that the evidence would minimize or eliminate the impact of the state's case or bolster the defense. *Jones* at ¶ 28. With that in mind, we find that

it is entirely reasonable to conclude that Polivka, as the person driving the car in which J.R. was kidnapped, certainly could have provided testimony that this aspect of the incident was consensual, therefore bolstering Jenkins' defense. For these reasons, we find that Jenkins suffered actual prejudice as a result of the nearly 20-year preindictment delay.

{¶ 32} Succinctly, there is no doubt that the lengthy delay between the allegation and the indictment prejudiced Jenkins' defense. After considering the evidence as it existed when the indictment was filed, we find that Jenkins was prejudiced by the 20-year delay. Jenkins established that he was actually and substantially prejudiced by the death of Polivka whose testimony could have bolstered his defense as to all charges and undermined the state's case with respect to the rape by calling into question the issue of consent and the credibility of J.R. Having determined that Polivka's death created actual prejudice were Jenkins to stand trial today, we now turn our attention to the second prong of the analysis, the state's reason for the delay.

{¶ 33} In the instant case, the trial court elected not to rule on the second prong. Having found that Jenkins failed to prove prejudice, the trial court determined that it was unnecessary to address whether the state had a justifiable reason for the delay noting:

> Because prejudice hasn't been proved it is not necessary to make a finding of whether the delay from the crime until the indictment was justified. Nevertheless, because of the possibility that prejudice would be found the parties made a full record of the evidence and their

respective arguments in support of their competing claims that delay was or was not justified.

{¶ 34} Even though the trial court noted there was a full record made of the parties' respective arguments, we are restricted in our review by two well-settled principles of appellate review:

> First, under Article IV, Section 3(B)(2) of the Ohio Constitution, appellate courts have jurisdiction to "review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." * * * Second, an appellate court limits review to *issues actually decided by the trial court in its judgment.* See *Bowen v. Kil-Kare, Inc.,* 63 Ohio St.3d 84, 89, 585 N.E.2d 384 (1992) (declining to rule on issue not decided by trial court.)

(Emphasis added.) *Lycan v. Cleveland,* 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21.

{¶ 35} Having determined there was no actual prejudice, it was unnecessary for the trial court to address the second prong of the preindictment delay test. Although the record is complete before us, the decision on the second prong remains the province of the trial court. Therefore, we cannot address it.

{¶ 36} Accordingly, we sustain the first assignment of error in part and overrule it in part. The trial court erred in finding that Jenkins was not prejudiced by the period of preindictment delay. However, we affirm the trial court's decision not to address the reason for the delay because that was the appropriate decision under preindictment-delay analysis when a court does not find prejudice. As we *have* found prejudice, we sustain the first assignment of error and remand the case for the trial court to conduct the second prong of the review.

**{¶ 37}** In the second assignment of error, Jenkins argues that the trial court erred in reinstating his convictions. Based on our resolution of the first assignment of error, where we found actual prejudice and remanded to the trial court to complete the second prong of the test for prejudicial preindictment delay, we decline to address the second assigned error because it is not yet ripe for review.

**{¶ 38}** Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, J., CONCURS IN PART AND DISSENT IN PART (WITH SEPARATE OPINION ATTACHED);
SEAN C. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶ 39}** I respectfully concur in part and dissent in part from the majority opinion. I agree with the majority's conclusion that Jenkins established that he suffered actual and substantial prejudice as a result of the nearly 20-year

preindictment delay in this case. I disagree with the majority's conclusion that we are precluded from addressing the second prong of the preindictment delay test concerning whether the state had a justifiable reason for the delay.

{¶ 40} This is the fifth appeal in which this court has addressed claims arising out of Jenkins's 2014 convictions. In analyzing whether Jenkins received ineffective assistance of counsel for his trial counsel's failure to file a motion to dismiss for preindictment delay, this court agreed with an earlier appeal in codefendant Dickerson's case and found "that the unavailability of Jerry Polivka constitutes actual prejudice." *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216 (8th Dist.). Despite this court's finding of actual prejudice, the trial court on remand ignored this court's finding and analysis in addressing the issue of preindictment delay.

{¶ 41} The majority in *Jenkins II* placed particular emphasis on the fact that Polivka would have been able to testify as to what occurred during the almost three-hour period that the victim was completely unable to remember. *Jenkins II* at ¶ 37. The victim was the state's key witness at trial. She testified that at the time of the alleged rape, she had been "living recklessly," and that on the day of the incident, she had been drinking and smoking and was under the influence. *Id.* at ¶ 7. Although the timeline presented by the state at trial was based largely on the victim's recollection of events, the victim was unable to recall what exactly happened between approximately 1:30 a.m., when she accepted a ride from Polivka, who was driving with Dickerson and Jenkins as passengers, and 4:42 a.m., when the hotel

receipt showed that Polivka rented a hotel room for the victim and defendants. At a minimum, Polivka's testimony would have filled in a considerable gap in the sequence of events as they were presented at trial.

{¶ 42} *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984), remains binding precedent on Ohio courts in preindictment delay cases. In the instant case, Jenkins presents a significantly stronger claim of actual prejudice than the appellant in *Luck*. In *Luck*, the Ohio Supreme Court found that the defendant was prejudiced by a 15-year preindictment delay for murder. The court balanced the alleged sources of actual prejudice — the death of two witnesses, the fading of memories and changing of appearances, and the loss of all of the recorded interviews with potential witnesses compiled shortly after the murder — against the other admissible evidence in the case and found that Luck had suffered actual prejudice. *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984). Specifically, the court found that even though the state had circumstantial evidence linking Luck to the victim's death, "it cannot be said that the missing evidence or the dead witness would not have minimized or eliminated the impact of the state's circumstantial evidence." *Id.*

{¶ 43} Unlike Jenkins, Luck confessed to killing the victim in self-defense on the day of her arrest.[4] Luck's version of events did not dispute the fact that she killed the victim; Luck essentially asserted that she killed the victim in self-defense. This

_____

[4] Although the Ohio Supreme Court ultimately determined that Luck's confession was obtained in violation of her Sixth Amendment rights, it considered her claim of actual prejudice amounting to preindictment delay in the context of the alleged confession.

is analogous to the instant case, in which Jenkins does not contest that he had a sexual encounter with the victim, but his theory of the case throughout trial and numerous appeals has been based on the notion that the encounter was entirely consensual.

{¶ 44} As with the missing witness in the instant case, Luck did not show exactly what the missing witnesses in her case would have testified to in support of her defense, nor was she required to have done so. Instead, Luck merely argued that one witness, a friend who was allegedly in the victim's apartment when the victim was killed, "was the one person who could have helped her in this matter but he is dead." *Id.* The other witness was a doctor who allegedly treated Luck for a hand injury on or around the date of the murder. Luck did not explain how exactly the doctor's testimony would be relevant, let alone how it would have bolstered her defense. Reviewing Luck's claim, the Ohio Supreme Court found that Luck was "obviously prejudiced by not being able to seek verification of her story from [her friend] and thereby establish mitigating factors or a defense to the charge against her." *Id.* at 158. When the court reiterated the relevant standard in *Jones*, it looked to *Luck*, stating that Luck suffered actual prejudice "although there was no record establishing what the witness would have actually testified to." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 25.

{¶ 45} Unlike Luck, Jenkins is able to point to specific evidence in the record requiring a conclusion that Polivka's testimony would not only be relevant, it would minimize or eliminate the impact of the state's evidence and bolster Jenkins's

defense. Where Luck's claim of actual prejudice was based on her unsupported assertions that the missing witnesses' testimony would have been helpful to her at trial, Jenkins's claim of actual prejudice is supported by evidence in the record, including the victim's own testimony. It is undisputed that Polivka was with the victim and defendants on the night of the incident. Evidence in the record, such as the victim's testimony and the hotel receipt, establishes that Polivka picked up the victim, drove the victim and defendants to a hotel, and rented a room for the victim and defendants.

**{¶ 46}** The *Jones* standard makes clear that a defendant's arguments in support of an actual prejudice claim cannot be based on "mere speculation" because the theoretical possibility of lost evidence is insufficient to establish actual prejudice. *Id.* at ¶ 27. In cases in which the defendant's claims regarding lost evidence or unavailable witnesses are entirely unsupported by the record, this court has correctly found that those claims are too remote and speculative to establish actual prejudice. *State v. Danzy,* 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, ¶ 25. We reiterate, however, that this is not a case where Jenkins's actual prejudice is based on unfounded or entirely speculative claims. Jenkins does not assert, and there is no way of knowing, what exactly Polivka would have testified to at trial. Like Luck, though, Jenkins has clearly shown that he was prejudiced because he was unable to seek verification of his recollection of events from someone who was with him on the night of the incident. Luck had nothing but her word to support her claim that one of the unavailable witnesses was present for the murder and therefore

would have had relevant testimony. Jenkins, however, has pointed to evidence in the record, including the victim's own testimony, showing that Polivka was present when the victim first encountered the defendants, drove them around, and ultimately rented the hotel room where the alleged rape took place. Thus, while Polivka of course would not have been able to testify as to whether the sexual encounter was consensual, he would have been able to provide essential testimony as to his impression of the victim throughout the entire hours-long encounter, his relationship with the defendants, the nature of the interaction between the victim and the defendants, and his reason for renting a hotel room for the victim and defendants. Therefore, Jenkins's claim that he suffered actual prejudice is significantly stronger than Luck's successful claim because it is corroborated by documentary evidence and testimony in the record.

{¶ 47} In the instant case, Jenkins has repeatedly emphasized that not only was Polivka present for at least part of the incident in question, Polivka could likely have presented an account of the several hours of which the victim has no memory. Polivka also could have testified as to how and why the victim got into his car in the first place, as well as why he drove the victim and defendants to a hotel and rented a room for them. In providing such an account, Polivka's testimony would have "minimized or eliminated the impact of the state's evidence" by contradicting significant aspects of the state's key witness's testimony and therefore undermining the victim's version of events. Polivka's testimony likewise would have "bolstered the defense" by verifying Jenkins's account of events — that the sexual encounter

was consensual. With respect to consent, an essential element of the rape offense to be established beyond a reasonable doubt, the state's case rested entirely on the victim's own testimony. Any evidence that could have undermined the victim's credibility at trial would have had an impact on the outcome of this case. It is not for this court to determine whether such missing or unavailable evidence would have resulted in a not guilty verdict at trial. We are instead tasked with determining whether the evidence would "minimize or eliminate the impact of the state's evidence and bolster the defense." *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 28. Applying this standard to the facts of this case, I believe it is clear that Jenkins has established actual prejudice. For these reasons, I agree with the majority's conclusion that Jenkins satisfied the first prong of preindictment delay by establishing that he suffered actual prejudice.

{¶ 48} I disagree, however, with the majority opinion's conclusion that we are precluded from determining whether the state has established a justifiable reason for the delay, and its subsequent conclusion that a remand is required for the trial court to conduct an additional review of this issue.

{¶ 49} In this case, we are reviewing the trial court's decision on a motion to dismiss for preindictment delay. This court applies a de novo standard of review to a trial court's decision regarding legal issues in a motion to dismiss for preindictment delay. *State v. Jabbar*, 8th Dist. Cuyahoga No. 109642, 2021-Ohio-1191, ¶ 19, citing *State v. Knox*, 8th Dist. Cuyahoga Nos. 103662 and 103664, 2016-Ohio-5519, ¶ 12, citing *State v. Gaines*, 193 Ohio App.3d 260, 2011-Ohio-1475, 951

N.E.2d 814 (12th Dist.). "'De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination.'" *Id.*, quoting *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5. Here, as the majority notes, the trial court incorrectly determined that Jenkins had not suffered actual prejudice. Based on this incorrect conclusion, the trial court's analysis did not include a determination as to whether the state's delay was justifiable. This court's review, however, necessarily encompasses both prongs of the preindictment-delay analysis. In deciding the motion to dismiss, the trial court heard evidence and arguments as to both prongs of preindictment delay. Our review of the trial court's decision, therefore, can and should address both prongs of preindictment delay. For these reasons, I do not believe that it is necessary to remand the case for the trial court to address the second prong.

{¶ 50} Because I believe that our review in this case encompasses both prongs of the preindictment-delay analysis, I would find that with respect to the second prong, the state was unable to explain, let alone justify the delay in this case. The state asserts that the reasons for the nearly 20-year delay were "investigative." Nevertheless, the state does not dispute that between 1994, when the men in this case were identified and arrested in the hotel room in which the alleged rape took place, and 2012, when the victim's rape kit was tested for DNA, no investigation took place. Likewise, it is undisputed that no investigation took place despite authorities having collected physical evidence, identifying and arresting the men, and identifying a critical witness within hours of the incident. This was not a cold case,

in which an unknown perpetrator committed a crime and the state had no investigative leads or physical evidence connecting the crime to a suspect. The state had ample physical evidence and had both men in custody for several days immediately following the incident and then chose to release them and not pursue the case, doing nothing for nearly 20 years.

{¶ 51} Additionally, I am not persuaded by the state's assertion that the Cleveland Police Department "did not do DNA testing" in 1994. There is a significant difference between arguing that DNA testing did not exist or was unavailable and arguing that it was simply not done. Further, unlike cases in which the suspect's identity is unknown, it is unclear exactly why the DNA testing done in this case was as critical as the state seems to imply, given that the young men were found sound asleep in the hotel room, arrested, and kept in police custody for days before they were released and the investigation ceased. Even if the DNA testing was critical, however, this only supports a conclusion that the delay in this case was the result of negligence or error in judgment. Rather than testing the victim's rape kit in 1994 to obtain this critical evidence, the state elected to close the investigation in the case entirely.

{¶ 52} Finally, to the extent that the state argues that the delay was, at least in part, a result of J.R.'s unwillingness to cooperate, a review of the record easily contradicts this argument. I acknowledge that J.R. did not choose to pursue the matter. If the reason for closing the investigation in 1994 was because the victim expressed a desire not to pursue the case, however, the state seems to have entirely

disregarded this desire in 2012 when it decided to reopen the investigation without any input from the victim, let alone any indication that she had a change of heart as to whether or not to pursue the matter 18 years later. For these reasons, I would find that the state has not satisfied its burden of showing that the preindictment delay in this case was justifiable. Additionally, I would note that Jenkins, the state of Ohio, and the alleged victim in this case are all entitled to some measure of finality, and this will not be achieved by ordering yet another remand.

{¶ 53} Therefore, I would find that the trial court erred in denying Jenkins's motion to dismiss for preindictment delay and in reinstating his conviction. I would accordingly reverse the judgment of the trial court and vacate Jenkins's convictions. For these reasons, I respectfully concur in part and dissent in part.

SEAN C. GALLAGHER, A.J., DISSENTING:

{¶ 54} I respectfully dissent from the majority's conclusion that Jenkins and Dickerson were prejudiced by the preindictment death of Polivka. I understand the majority's decision, but I come to a different conclusion as I did in my separate concurring opinion in *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216 (8th Dist.) ("*Jenkins II*"), which referenced the dissent in *State v. Dickerson*, 8th Dist. Cuyahoga No. 102461, 2017-Ohio-177 ("*Dickerson II*"), asserting that no prejudice was shown in these cases. Although, in dicta, I disagreed with the *Dickerson II* majority's view that expressed prejudice was in play, I felt bound by the *Dickerson*

*II* opinion on the question of ineffective assistance of counsel. Thus, I concurred with the outcome in *Jenkins II.*

{¶ 55} In my view, these cases underscore an argument that the standard for determining prejudice outlined in *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100, and *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984), are at times unworkable and invite inconsistent outcomes. This view is particularly prevalent in cases where the identity of the offender was known at the time of the alleged crime and no prosecution was initiated. Those circumstances seem to cause the factual analysis on prejudice to take on a different and murky context.

{¶ 56} In the present case, Polivka was not present during the commission of the rapes committed by the then 21- and 22-year-old men against the 16-year-old victim. And even if Polivka possessed exculpatory evidence, a speculative fact yet to be established, Polivka's death precluded his being named as a codefendant for his conspiratorial conduct underlying the kidnapping convictions. In the appropriate parlance, Polivka was not available to testify before the preindictment delay so that his death was not the cause of his unavailability at trial. It is well settled that the defendant must not only show the exculpatory nature of the missing evidence, but must also demonstrate that the witness would have been available to testify *but for the preindictment delay. See, e.g., United States v. Bouthot*, 685 F.Supp. 286, 298 (D.Mass.1988) (defendant failed to establish that the codefendant would have testified at trial, and therefore, failed to show prejudice from the codefendant's

unavailability); *United States v. Stierwalt*, 16 F.3d 282, 285 (8th Cir.1994) (noting in overruling the claim of preindictment delay that the defendant failed to prove that the codefendant would have testified at the defendant's trial).

{¶ 57} There are only three factual scenarios here: (1) Polivka would have been indicted as a codefendant for his aiding Jenkins and Dickerson in the kidnapping of the victim, and therefore Polivka was not "available" to testify just as neither Jenkins nor Dickerson was available to testify at the other's trial through the assertion of their Fifth Amendment rights; (2) Polivka could provide exculpatory evidence on the kidnapping charge in the attempt to avoid prosecution for his involvement, the same as Jenkins and Dickerson could provide for each other, but Polivka cannot testify to any events during the rapes; or (3) Polivka had incriminating information to be offered in exchange for a plea in which case his unavailability benefited Jenkins and Dickerson. Importantly, none of those scenarios entitle Jenkins or Dickerson to a dismissal for preindictment delay.

{¶ 58} The majority maintains that Polivka's status as a codefendant should not preclude a finding of prejudice because

> we are aware of no case in which a defendant is required to show not only that a deceased witness would provide relevant testimony that would minimize the impact of the state's case, but also that the witness would be able to overcome any alleged procedural barriers to testifying on the defendant's behalf.

*State v. Dickerson*, 8th Dist. Cuyahoga No. 109434, ¶ 25; *but see Bouthot* at 298; *Stierwalt* at 285; *United States v. Hofstetter*, E.D.Tenn. No. 3:15-CR-27-TAV-CCS, 2018 U.S. Dist. LEXIS 59058, at 11 (Jan. 3, 2018) (the codefendant's unavailability

was not prejudicial since the defendant could call the remaining codefendants to confirm his story); *State v. Danzy*, 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, ¶ 25 (evidence was not available immediately after the crime and, therefore, could not constitute prejudice under the preindictment-delay analysis). Thus, I cannot agree with the majority that Dickerson demonstrated prejudice because he was "unable to seek verification of his story from someone who was with him on the night of the incident."

{¶ 59} Under the majority's proposition, that a codefendant's reluctance to testify is not considered, Polivka's unavailability is immaterial. Jenkins and Dickerson could provide the missing testimony since both were undisputedly present during the entire criminal event — more so than Polivka, who was not present during the actual commission of the crime for which Dickerson and Jenkins were convicted. *See, e.g.*, *Hofstetter* (the codefendant's unavailability was not prejudicial since the defendant could rely on the remaining codefendants to confirm his story). According to the majority's rationale, Dickerson and Jenkins have someone who was present to seek verification of their stories despite Polivka's death. *Id.*

{¶ 60} Since the majority's analysis depends on the fact that the state may not rely on the witness's status as a codefendant to establish the unavailability of the testimony before the delay, then fairness and every other notion of due process dictate that Jenkins and Dickerson cannot hide behind their status as codefendants to provide Polivka's missing testimony for each other. The death of a witness

constitutes prejudice only "'if the defendant can identify exculpatory evidence that was lost *and show that the exculpatory evidence could not be obtained by other means.*'" *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 26, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 103; *Hofstetter*. Jenkins and Dickerson have not met their burden to demonstrate that Polivka's testimony would have aided their defenses, even if we ignore the fact that Jenkins and Dickerson could provide each other the missing evidence. *Dickerson II* at ¶ 73 (Stewart, J., dissenting).

**{¶ 61}** There is no additional burden here. All defendants claiming preindictment delay must demonstrate that the testimony or evidence would have been available at an earlier trial and are unavailable solely based on the preindictment delay. *Danzy*, 8th Dist. Cuyahoga No. 109433, 2021-Ohio-1483, at ¶ 25. This necessarily means that if a codefendant is deceased or unavailable through the passage of time, the defendant asserting preindictment delay must demonstrate that a codefendant would have testified at the other's trial or that no other codefendant could offer the same evidence. *Bouthot*; *Hofstetter*; *Stierwalt*. Jenkins and Dickerson's claims both fail here because each could have provided the other the same evidence Polivka could have offered and his credibility was no better given his involvement in the kidnapping.

**{¶ 62}** Although I disagree that a remand is necessary in this case, the lead opinion's remand to permit the trial court to review the second prong of the

prejudice analysis is the correct course of action. Nevertheless, I dissent from the majority's decision to reverse. I would affirm the trial court in every respect.